UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRIDE TECHNOLOGIES, LLC d/b/a PRIDE ONE

                Plaintiff,

    -against-                        Case 1:19-cv-11315-LGS

DANIEL KHUBLALL,

                Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**DAVIS & GILBERT LLP**
Neal H. Klausner
1675 Broadway
New York, New York 10019
212.468.4800
nklausner@dglaw.com

**HOFFMANN & ASSOCIATES**
Andrew S. Hoffmann
450 Seventh Avenue, Suite 1400
New York, New York 10123
212.679.0400
andrew.hoffmann@hoffmannlegal.com

*Attorneys for Plaintiff
Pride Technologies, LLC d/b/a Pride One*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

  I.   LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT ......................... 3

  II.  LEGAL STANDARD FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS ................................................................................................... 6

  III.   KHUBLALL IS A THIRD PARTY DISTINCT FROM THOMSON ........................... 7

  IV.   KHUBLALL ACTED FOR THE SOLE PURPOSE OF HARMING PRIDE ............... 8

  V.  IN THE ALTERNATIVE, KHUBLALL ACTED FOR A WRONGFUL PURPOSE OR USED DISHONEST, UNFAIR, OR IMPROPER MEANS ...................................... 12

  VI.   PRIDE'S DAMAGES RESULT FROM KHUBLALL'S ACTIONS .......................... 15

  VII.   PRIDE IS ENTITLED TO PUNITIVE DAMAGES .................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015)........................................................................................7

*A.F.C. Enters. v. N.Y.C. Sch. Constr. Auth.*,
   CV-98-4534, 2001 U.S. Dist. LEXIS 24447 (E.D.N.Y. Sep. 5, 2001) ...........................11, 12

*Adams v. Dep't of Juvenile Justice*,
   143 F.3d 61 (2d Cir. 1998)........................................................................................3, 4

*Adickes v. S. H. Kress & Co.*,
   398 U.S. 144 (1970)....................................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................................4

*In re Bennett Funding Group, Inc.*,
   270 B.R. 126 (S.D.N.Y. 2001)......................................................................................4

*Brady v. Town of Colchester*,
   863 F.2d 205 (2d Cir. 1988)........................................................................................4

*Burrell v. City Univ. of N.Y.*,
   894 F. Supp. 750 (S.D.N.Y. 1995) ..............................................................................4

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (N.Y. 2004) ......................................................................................7, 9

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir. 2003)..........................................................................................16

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   286 F. Supp. 2d 309 (S.D.N.Y. 2003).........................................................................12

*Eastway Constr. Corp. v. City of New York*,
   762 F.2d 243 (2d Cir. 1985)........................................................................................3

*Fiduciary Network, LLC v. Hurley*,
   No. 1:19-cv-379-GHW, 2020 U.S. Dist. LEXIS 137867 (S.D.N.Y. July 31, 2020)..............10

*Hayden et al. v. Paul, Weiss, Rifkind, Wharton & Garrison*,
   955 F. Supp. 248 (S.D.N.Y. 1997) ..............................................................................4

*Hayes v. Case-Hoyt Corp.*,
   262 A.D.2d 1018 (App. Div. 4th Dep't 1999).................................................................12

*Hayes v. N.Y. City Dep't of Corrections*,
  84 F. 3d 614 (2d Cir. 1996)........................................................................4

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992) .................................................................16

*Lyons v. Menoudakos & Menoudakos, P.C.*,
  63 A.D.3d 801 (App. Div. 2nd Dept. 2009) ..............................................14

*Martin Food Distribs., Inc. v. Berkowitz*,
  284 A.D.2d 240 (App. Div. 1st Dep't 2001) .............................................12

*Miteva v. Third Point Mgmt. Co.*,
  323 F. Supp. 2d 573 (S.D.N.Y. 2004)................................................ *passim*

*Mitzvah Inc. v. Power*,
  106 A.D.3d 485 (App. Div. 1st Dept. 2013)..............................................14

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*,
  182 F.3d 157 (2d Cir. 1999)........................................................................3

*Nora Bevs., Inc. v. Perrier Group of Am., Inc.*,
  164 F.3d 736 (2d Cir. 1998)........................................................................4

*Pagliaccio v. Holborn Corp.*,
  289 A.D.2d 85 (App. Div. 1st Dept. 2001)...........................................13, 15

*Perry v. Int'l Transp. Workers Fed.*,
  750 F. Supp. 1189 (S.D.N.Y. 1990)..........................................................12

*Petkanas v. Kooyman*,
  303 A.D.2d 303 (App. Div. 1st Dept. 2003)................................................8

*Purgess v. Sharrock*,
  33 F.3d 134 (2d Cir. 1994)........................................................................16

*Scholastic, Inc. v. Harris*,
  259 F. 3d 73 (2d Cir. 2001)..........................................................................4

*Sommer v. Kaufman*,
  59 A.D.2d 843 (App. Div. 1st Dept. 1977)................................................15

*Tomka v. Seiler Corp.*,
  66 F.3d 1295 (2d Cir. 1995)........................................................................4

*Whitehurst v. 230 Fifth, Inc.*,
  998 F. Supp. 2d 233 (S.D.N.Y. 2014)........................................................12

Plaintiff Pride Technologies, LLC d/b/a Pride One ("Pride" or "Plaintiff"), by and through its attorneys, respectfully submits this Memorandum of Law in Opposition to Defendant Daniel Khublall ("Khublall" or "Defendant")'s Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This is a case about Daniel Khublall, a conniving and vindictive individual, abusing his position of influence at Thomson Reuters Corporation and/or its subsidiaries ("Thomson") by tortiously interfering with Pride's valuable business relationship with Thomson, causing Pride to lose millions of dollars. Pride and Thomson had enjoyed a longstanding, successful business relationship since 2013, with Pride providing payroll services for a large portion of Thomson's temporary staff. Throughout their relationship, Thomson consistently commended Pride for its excellent services and considered ways to expand their relationship. But after Pride refused to participate in an illicit scheme devised by Khublall, Khublall punished Pride by causing Thomson to cease using Pride as a payroll vendor.

Beginning in 2014, Khublall participated in managing the Pride-Thomson relationship. In 2016, Khublall approached Leo Russell, CEO and co-founder of Pride ("Russell") with an unethical proposal: Khublall would cause Thomson to pay Pride an excessive margin for Pride continuing to provide the same level of payroll services; in exchange, Khublall expected Pride to (a) guarantee him a lucrative job at Pride, (b) transfer a portion of the extra fees Thomson would pay Pride to a third-party, TalentNet, Inc. ("TalentNet"), and (c) promote TalentNet's services to other third parties and help TalentNet grow its book of business. Russell vehemently refused to participate in this wrongful plot. But Khublall himself was already aggressively seeking to secure business for TalentNet from multiple third parties that had no relationship with Thomson, all without Thomson's knowledge.

In 2017, when Khublall took full charge of Thomson's outsourced services program, he threatened to replace Pride as a Thomson payroll vendor if Russell did not participate in Khublall's wrongful plan.  When Russell again refused to be complicit in Khublall's scheme, Khublall made good on his threat: he retaliated by causing Thomson to cease using Pride as a payroll vendor.

Khublall has made the focus of his motion for summary judgment a complete red herring: he argues that Thomson hired TalentNet as part of a legitimate plan to change its contingent workforce staffing model to a direct-sourcing model.  But Pride is not challenging Thomson's decision to pursue direct sourcing in lieu of using headhunters to identify temporary staff.  Pride's work for Thomson did not involve identifying temporary staff, so Thomson's use of TalentNet for direct sourcing would have no impact on its continued use of Pride for payroll services.

The record is replete with material issues of fact concerning Khublall's scheme, threats, and motives and whether he hid all of this from Thomson when he caused Thomson to cease continuing to use Pride as a payroll vendor.  Notably absent from Khublall's motion papers is any declaration from Khublall himself denying his scheme, threats and malicious intent; denying his efforts to build up TalentNet's business without Thomson's knowledge; denying that he falsely held himself out to the world as the Thomson representative authorized to hire and fire vendors for Thomson's contingent workforce program; or even explaining who at Thomson, if not him, decided to fire Pride and why.  This is consistent with Khublall's incredible and evasive deposition, where he repeatedly refused to answer direct questions about who decided to fire Pride and why.  And, tellingly, Khublall's motion is supported only by affidavits of Thomson employees or former employees who too avoid addressing who decided to fire Pride and why,

2

and whether Thomson, to this day, was aware of the scheme Khublall proposed to Pride, his threats to Pride, and his own efforts to enrich TalentNet and himself without Thomson's knowledge, and whether Khublall was acting outside the scope of his employment—which seems obvious—when he engaged in these acts and caused Thomson to cease using Pride as a payroll vendor.

As explained below, because there are material issues of fact requiring trial concerning whether Khublall interfered with Pride's relationship with Thomson for the sole purpose of retaliating against Pride or through dishonest, unfair, or improper means, summary judgment is wholly inappropriate and, respectfully, the Court should deny Khublall's motion.

## STATEMENT OF FACTS

The facts of this case as stated in Pride's Response and Counterstatement of Facts, pursuant to SDNY Local Rule 56.1, are hereby incorporated by reference.

## ARGUMENT

## I.   LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

It is axiomatic that summary judgment is a "drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), cert. denied, 484 U.S. 918 (1987) (citations omitted). *See also Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157 (2d Cir. 1999).

Therefore, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact. *Id. See also Adickes v. S. H. Kress & Co*., 398 U.S. 144, 157 (1970); *Adams v. Dep't of Juvenile Justice*, 143 F.3d 61, 65 (2d Cir. 1998). Summary judgment is proper only if there is no genuine issue as to any material fact and when, based upon facts not in

dispute, the moving party is entitled to judgment as a matter of law. *Scholastic, Inc. v. Harris*, 259 F. 3d 73, 81 (2d Cir. 2001).

A court must deny a motion for summary judgment when a genuine issue of material fact exists for trial, *i.e.*, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *In re Bennett Funding Group, Inc.*, 270 B.R. 126 (S.D.N.Y. 2001). On a motion for summary judgment, the Court's "function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510-11; *see also, Hayden et al. v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 253 (S.D.N.Y. 1997). Thus, issues such as witness credibility and evaluating conflicting evidence are properly matters for a trier of fact, and in applying the stringent standards for determining a motion for summary judgment, a court "should not weigh evidence or assess the credibility of witnesses." *Hayes v. N.Y. City Dep't of Corrections,* 84 F. 3d 614, 619 (2d Cir. 1996).

The Second Circuit has repeatedly held that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (Brennan, J., dissenting)); *see Adams* 143 F.3d, 65 ; *Nora Bevs., Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998); *Tomka v. Seiler Corp*., 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of N.Y.,* 894 F. Supp. 750, 757 (S.D.N.Y. 1995).

In the instant case, Khublall's motion for summary judgment only highlights the existence of multiple genuine, triable issues of fact:

- Pride has submitted declarations from its founder and CEO Leo Russell and Managing Director Kate Goss describing a wrongful scheme in which Khublall pressured Pride to participate, including offering Khublall a job at Pride, promising to cause Thomson to pay Pride additional amounts for the same level of services if Pride would transfer a portion of those amounts to TalentNet, and requiring Pride to promote TalentNet's services to other third parties, threatening to replace Pride as payrolling vendor if it did not participate in this scheme, and then ultimately retaliating against Pride when it refused to participate in this scheme, causing Pride to lose millions of dollars in business from Thomson.

- Pride has introduced evidence of Khublall himself extensively promoting TalentNet without informing anyone at Thomson of his actions, informing other parties seeking to become contingent workforce suppliers to Thomson that "I'm the person in charge of the program," and making supplier decisions without informing anyone at Thomson.

- Russell and Goss both testified that after Pride refused to participate in Khublall's improper scheme, Khublall personally informed them that he had decided to terminate Pride as Thomson's payrolling vendor. Khublall told Russell it was because Pride "had not gotten on the train when I offered the opportunity to" and hung up on Russell when confronted with the fact that Khublall's decision was solely motivated by Pride's refusal to be complicit in his scheme. Likewise, when

Goss asked Khublall for an explanation for his decision to terminate Pride, he refused to answer.

- Russell and Goss both testified that, before Khublall informed them that Thomson would no longer be using Pride as Thomson's payrolling vendor, Thomson and Khublall himself had consistently commended Pride for its excellent work and explored ways to expand Pride's services to Thomson.

Meanwhile, Khublall has not even submitted a declaration from himself denying his tortious conduct and malicious intent in causing Thomson to cease using Pride as a payroll vendor, let alone demonstrating the absence of any material issue concerning that conduct. He submits multiple declarations from representatives of Thomson, but (a) none indicate who was responsible for deciding to terminate Pride; (b) none offer an explanation for why Khublall decided to terminate Pride or recommend that Pride be terminated; (c) they contend that the decision was the result of an RFP prepared and spearheaded by Khublall, but offer no basis to refute that the RFP was a sham; and (d) offer no details of their discussions with Khublall about the decision to terminate Pride. This is consistent with the incredible and evasive deposition testimony of Khublall when he was asked multiple times about who at Thomson decided to fire Pride and why, and he refused to provide a straight answer.

Thus, summary judgment is clearly inappropriate, and Khublall's motion should be denied in its entirety.

## II.   LEGAL STANDARD FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

To prevail on a claim for tortious interference with business relations, a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered

with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015).  Here, it is undisputed that Pride had a business relationship with Thomson, and there are at least genuine issues of fact concerning Khublall's interference with that relationship, his purpose and/or the means he used in causing that interference, and the extent to which Khublall's acts injured Pride's business relationship with Thomson.

The primary element addressed on Khublall's motion is whether Khublall interfered with Pride's relationship with Thomson "for a wrongful purpose" or through "dishonest, unfair, or improper means":  there is substantial evidence that he did and certainly a genuine issue on this material fact requiring trial.

A defendant acts for "a wrongful purpose" where, among other ways, he "engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (N.Y. 2004) (internal citation omitted).  As demonstrated below, there is at least a genuine issue, precluding summary judgment, concerning whether Khublall interfered with Pride's business relations with Thomson for the sole purpose of harming Pride or, alternatively, through dishonest, unfair, or improper means.

### III.    KHUBLALL IS A THIRD PARTY DISTINCT FROM THOMSON

Khublall asserts that he is not a third party distinct from Thomson, on the basis that he was Thomson's employee when he pressured Pride to be complicit in an illicit scheme and then retaliated against Pride for not doing so by causing Thomson to cease using Pride as a payrollee vendor.  But when Khublall engaged in these tortious acts, he was doing so outside the scope of his employment with Thomson.   Indeed, while Khublall only supports his motion with

declarations from representatives of Thomson, none of those witnesses indicate knowledge of Khublall's scheme, much less testify that they authorized or approved it.

As plaintiff admits, New York courts will sustain a claim for tortious interference where "the acts of the defendant corporate officers which resulted in the tortious interference with contract either were beyond the scope of their employment or, if not, were motivated by their personal gain, as distinguished from gain for the corporation," meaning "undertaken with malice and were calculated to impair the plaintiff's business for the personal profit of the [individual] defendant.'" *Petkanas v. Kooyman*, 303 A.D.2d 303, 305 (App. Div. 1st Dept. 2003) (internal citations omitted). The thrust of Pride's allegations are that Khublall caused Thomson to cease using Pride as a payrolling vendor solely to retaliate against Pride for refusing to be complicit in Khublall's wrongful scheme, a scheme that would have personally enriched Khublall and was outside the scope of Khublall's employment by Thomson. Furthermore, evidence of the payments TalentNet made to Khublall, Khublall's efforts to secure new business for TalentNet from third parties, and the pressure Khublall put on Pride and others to do the same, all without Thomson's knowledge, creates an issue of fact regarding whether Khublall had an undisclosed financial interest in TalentNet, outside the scope of his employment with Thomson.

Therefore, there is at least an issue of fact as to whether Khublall is a third party distinct from Thomson.

### IV.   KHUBLALL ACTED FOR THE SOLE PURPOSE OF HARMING PRIDE

Khublall acted for the sole purpose of inflicting intentional harm on Pride. Namely, just as he had threatened, Khublall caused Thomson to cease using Pride for payrolling services out of spite and in retaliation for Russell's refusal to participate in Khublall's illicit scheme to enrich himself. Pride's payrolling services should have continued unabated, or grown, even if Thomson

8

moved to direct sourcing of its contingent workforce through TalentNet. The only reason Khublall facilitated the ending of Pride's payrolling services to Thomson was because Pride would not be complicit in his wrongful conduct.

"With respect to a claim of tortious interference with prospective business relations, whether the defendant acted with the 'sole purpose' of harming the plaintiff is a question of material fact." *Miteva v. Third Point Mgmt. Co.*, 323 F. Supp. 2d 573, 586 (S.D.N.Y. 2004). In *Miteva*, plaintiff brought a tortious interference with prospective business relations claim against his former employer and its owner, who plaintiff alleged reported to plaintiff's prospective employer that plaintiff lost money for defendants. Judge Marrero denied summary judgment where there was "ample evidence in the record – including [defendant's] email exchanges, his contacting [the COO of plaintiff's prospective employer] . . . and his apparent frustration over [plaintiff's] other employment – from which that a reasonable jury could find that [defendant] acted with the 'sole purpose' of harming [plaintiff]." *Id.* at 587.

Here, there is ample evidence from which the trier of fact could find that Khublall's sole purpose in causing Thomson to terminate Pride as its payrolling vendor was to harm Pride for not going along with his plan to secure himself lucrative employment, secretly transfer funds that he would cause Thomson to overpay Pride to TalenetNet, and/or to otherwise promote TalentNet to third parties other than Thomson for no legitimate business purpose.

Furthermore, where, as here, the parties "are not competitors, there may be a stronger case that the defendant's interference with the plaintiff's relationships was motivated by spite." *Carvel Corp. v. Noonan*, 3 N.Y.3d, 191. At a minimum, Khublall's motive is an issue of fact that cannot be decided on summary judgment.

That point was recently underscored in *Fiduciary Network, LLC v. Hurley*, No. 1:19-cv-379-GHW, 2020 U.S. Dist. LEXIS 137867, at \*34-35 (S.D.N.Y. July 31, 2020).  There, Judge Woods denied plaintiff's motion for summary judgment on its tortious interference with business relations claims on the basis that defendant's motivation for the interference posed a question of fact.  Fiduciary Network alleged that its former CEO, Hurley, acted solely to harm Fiduciary Network when, among other actions, Hurley advised executives of firms with which Fiduciary Network did business that Fiduciary Network had terminated its management team, including Hurley.  In response, Hurley indicated that his advice to these firms was not intended to harm Fiduciary Network, but rather to protect the firms' business interests.  The Court held that given conflicting evidence, it could not decide at the summary judgment stage whether Hurley's behavior was solely motivated by a desire to harm Fiduciary Network.  The Court found that such questions of fact in the context of a tortious interference with business relations claim were "unsurprising because 'questions of subjective intent' – such as whether Hurley acted solely to harm Fiduciary Network – 'can rarely be decided by summary judgment.'"  *Fiduciary Network*, 2020 U.S. Dist. LEXIS 137867, at \*33-34 (quoting *United States v. City of N.Y.*, 717 F.3d 72, 82 (2d Cir. 2013)).

Here, there is substantial evidence that Khublall, in anticipation of and then after becoming Thomson's head of outsourced workforce program in early 2017, started threatening Pride that he would cause Thomson to terminate Pride's payrollee vendor services unless Pride agreed to participate in his improper scheme to guarantee Khublall a job, accept excessive fees from Thomson and then transfer some of those funds to TalentNet, and promote TalentNet to multiple third parties—as Khublall himself was already doing—all without the knowledge of Khublall's superiors at Thomson.  When Russell continued to refuse to capitulate to Khublall's

threats, Khublall designed a sham RFP as a pretext for causing Thomson to terminate Pride as payrollee vendor.

Tellingly, Khublall has not even submitted his own declaration denying these facts and when asked at his deposition to explain who at Thomson had decided to fire Pride as a payrollee vendor and why, he repeatedly dodged and evaded answering.  On his instant motion, Khublall relies entirely on the declarations of current and former Thomson employees, none of whom Khublall had apprised of his scheme, and none of whom seem to know, to this day, that Khublall secretly promoted TalentNet to third parties and started receiving payments from TalentNet shortly after Thomson fired him.  Whether Khublall's interference with Pride's relationship with Thomson was motivated solely by his intent to retaliate against Pride is, at a minimum, a question of fact requiring trial.

A similar factual scenario presented itself in *A.F.C. Enters. v. N.Y.C. Sch. Constr. Auth.*, CV-98-4534 (CPS), 2001 U.S. Dist. LEXIS 24447, at *47 (E.D.N.Y. Sep. 5, 2001).  In *A.F.C.*, plaintiff, a general contractor, had a dispute with New York City Construction Authority, with which it had previously contracted to renovate and expand a public school.  Defendant informed a number of other city agencies, for which plaintiff had the opportunity to bid on various projects, that plaintiff performed poorly on the school project.  Plaintiff alleged that defendants made misrepresentations to those agencies, which subsequently designated plaintiff a non-responsible bidder and published that determination in a city database, to plaintiff's detriment. In denying the defendants' motion for summary judgment on plaintiff's tortious interference with business relationships claim, the Court held that "whether defendants intentionally interfered with that relationship and did so with the sole purpose of harming [plaintiff] presents questions

of fact to be determined by a jury." *A.F.C. Enters. v. N.Y.C. Sch. Constr. Auth.*, 2001 U.S. Dist. LEXIS, *47.

Just as the *A.F.C.* court was unable to determine, on a motion for summary judgment, defendants' motives in providing information about *A.F.C.* to the city agencies managing the projects on which plaintiff was bidding, there are questions of fact here as to why Khublall caused Thomson to cease using Pride as a payrollee vendor.  These questions of fact concerning Khublall's motives preclude summary judgment.  *See also Whitehurst v. 230 Fifth, Inc.,* 998 F. Supp. 2d 233, 261 (S.D.N.Y. 2014) (denying summary judgment on tortious interference with prospective economic advantage claim where a "factfinder could conclude that standing in the doorway of the lounge, shouting that 230 Fifth was a 'terrible club,' and warning individuals in line not to enter, constituted actions undertaken for the sole purpose of inflicting intentional harm on Defendant.")

## V.   IN THE ALTERNATIVE, KHUBLALL ACTED FOR A WRONGFUL PURPOSE OR USED DISHONEST, UNFAIR, OR IMPROPER MEANS

In the alternative, to the extent Khublall insinuates that his motives were not solely to harm Pride, Khublall's purpose in causing Thomson to terminate its relationship with Pride was wrongful and done with the use of dishonest, unfair, or improper means.

"The issue of 'wrongful means' is generally an issue of fact, capable of being proved true or false."  *Miteva*, 323 F. Supp. 2d at 585.  *See Martin Food Distribs., Inc. v. Berkowitz*, 284 A.D.2d 240, (App. Div. 1st Dep't 2001); *Hayes v. Case-Hoyt Corp.*, 262 A.D.2d 1018, 1019 (App. Div. 4th Dep't 1999); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 320-21 (S.D.N.Y. 2003); *Perry v. Int'l Transp. Workers Fed.*, 750 F. Supp. 1189 (S.D.N.Y. 1990).

In *Miteva*, plaintiff claimed that—even if her former employer's "sole purpose" in telling her prospective employers that she lost money for him was not to harm her—her former employer's statement was a misrepresentation, constituting wrongful means for the purposes of her tortious interference claim.  The court found that "whether [defendant's] statements were false and whether [defendant] knew that his statements were false are contested issues of fact that are material to resolving [plaintiff's] tortious interference claim, and therefore submission of these contested facts to a jury is appropriate."  *Miteva*, 323 F. Supp. 2d at 586.

Likewise, there is a question of fact here, as to whether Khublall acted for a wrongful purpose or used dishonest, unfair, or improper means in interfering with Thomson's business relations with Pride.  *See Pagliaccio v. Holborn Corp.*, 289 A.D.2d 85, 85, (App. Div. 1st Dept. 2001) (cause of action for tortious interference reinstated where a triable issue of fact was raised as to whether defendants frivolously threatened to sue plaintiff's employer if plaintiff's employment was not curtailed or terminated).

First, Khublall proposed a commercial bribe—proposing to cause Thomson to increase its payments to Pride in exchange for Pride providing Khublall a job and/or transferring a portion of its increased payments to TalentNet, and/or helping TalentNet increase its book of business— which standing alone constitutes dishonesty and impropriety.  Furthermore, behind the scenes, and without Thomson's knowledge, Khublall was setting up TalentNet and trying to enrich himself and TalentNet in the process.  Khublall curiously promoted TalentNet to numerous third parties unrelated to Thomson, such as Citi, Nike, Cisco, eBay, and Western Union, among others,, with no potential business justification related to his role at Thomson.  Immediately after Thomson fired Khublall, Khublall formed a company, Strategic Workforce Management, which immediately secured a contract with TalentNet to provide vague services.  Shockingly, TalentNet

proceeded to pay Khublall's company over $100,000.  Evidence of this wrongful conduct—all of which Khublall withheld from Thomson—at a minimum creates an issue of fact concerning whether Khublall had a wrongful purpose in causing Thomson to cease using Pride as a payrollee vendor, and the dishonest, unfair, and improper means he used to do make that happen. Indeed, on his motion for summary judgment, Khublall has not presented <u>any</u> evidence to respond to—much less eliminate the need for trial to determine—these material issues of fact.

In *Lyons v. Menoudakos & Menoudakos, P.C.*, 63 A.D.3d 801, 802-03, (App. Div. 2nd Dept. 2009), the New York Appellate Division, affirming the Supreme Court's denial of summary judgment, found that triable issues of fact existed regarding whether defendant's "professional judgment was affected by his personal business interests . . . and whether he furthered said interests by making misrepresentations to the seller about the creditworthiness of the plaintiff Laura Lyons, thereby wrongfully interfering with the transaction."  Similarly, regardless of whether Khublall needed a superior to approve his decision to fire Pride as payrollee vendor, his failure to disclose to Thomson his extensive efforts to enhance TalentNet's finances (e.g., through personally marketing TalentNet, pressuring Pride and others to promote TalentNet, asking Pride to transfer a portion of Thomson payments to TalentNet, and intending to secure payments to his company from TalentNet shortly after Thomson fired him) creates a triable issue of fact as to whether Khublall used dishonest, unfair and improper means to obtain that approval.

It would be inappropriate to resolve these many issues of material fact before submission to the trier of fact.  Therefore, the Court should deny Khublall's motion for summary judgment. *See also*, *Mitzvah Inc. v. Power*, 106 A.D.3d 485, 487, (App. Div. 1st Dept. 2013) (denying summary judgment where triable issues of fact existed regarding the "economic advantage

plaintiff had sought to gain" and "there was evidence of intentional, wrongful acts by defendants").

## VI.    PRIDE'S DAMAGES RESULT FROM KHUBLALL'S ACTIONS

Contrary to Khublall's claims, Pride's damages most certainly resulted from Khublall's actions.  Khublall's assertion that Pride caused the demise of its derivative income stream by refusing to adapt to Thomson's transformation to a direct sourcing model is wrong and certainly a disputed issue of fact requiring trial.  As explained above, Thomson's use of a direct sourcing model was immaterial to its ability to continue to utilize Pride for payrolling services.  The reason Thomson ceased using Pride for payrolling services was because of Khublall's wrongful acts, satisfying the requirement that Khublall's wrongful acts were the proximate cause of Thomson ceasing to use Pride as a payrolling vendor, causing Pride to lose millions of dollars in business.  *See Sommer v. Kaufman*, 59 A.D.2d 843, 843 (App. Div. 1st Dept. 1977) (defendants caused injury to plaintiff by bribing public official to deny plaintiff a building permit for the subject project); *Pagliaccio*, 289 A.D.2d at 85 (defendants alleged to have caused injury to plaintiff by threatening plaintiff's employer with harm if plaintiff's employment was not terminated).

## VII.    PRIDE IS ENTITLED TO PUNITIVE DAMAGES

Courts may impose punitive damages "where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime." *Miteva* 323 F. Supp. 2d at 587 (quoting *Prozeralik v. Capital Cities Comm., Inc.*, 82 N.Y.2d 466, (N.Y. 1993)).  "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and

deliberate disregard of the interests of others that the conduct may be called willful or wanton." *Id.*

Punitive damages are available in actions for tortious interference with prospective business relations. *See, e.g.*, *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003); *Purgess v. Sharrock*, 33 F.3d 134, 142 (2d Cir. 1994) (upholding an award of punitive damages where jury could have found that defendants acted "egregiously"); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 38 (S.D.N.Y. 1992). Here, the Court could find that Khublall's conduct was willful or wanton, and that he acted with a fraudulent or evil motive in causing Thomson to cease using Pride as a payrollee vendor. Pride respectfully submits that, at this phase, the Court should reserve its ability to impose punitive damages on Khublall if, based on the trial, it finds that he engaged in the dishonest, unfair, and wrongful conduct that Pride contends the evidence at trial will prove. Khublall's motion to bar Pride's claim for punitive damages, therefore, should be denied.

Dated:   New York, New York
           December 4, 2020

Respectfully submitted,

**DAVIS & GILBERT LLP**

By:   */s/ Neal H. Klausner*
       Neal H. Klausner
       1675 Broadway
       New York, New York 10019
       212.468.4992
       nklausner@dglaw.com

**HOFFMANN & ASSOCIATES**

By:   */s/ Andrew S. Hoffmann*
       Andrew S. Hoffmann
       450 Seventh Avenue, Suite 1400
       New York, New York 10123
       212.679.0400
       andrew.hoffmann@hoffmannlegal.com

*Attorneys for Plaintiff*
*Pride Technologies, LLC d/b/a Pride One*